## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

_____

|  |  |  |
|---|---|---|
| AMERICAN DAIRY QUEEN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | |
| W.B. MASON CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____ )

### COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, TRADEMARK DILUTION, AND DECEPTIVE TRADE PRACTICES

### DEMAND FOR JURY TRIAL

### NATURE OF THE CASE

This is an action for trademark infringement, unfair competition, and trademark dilution under the federal Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.*; trademark infringement and unfair competition under the common law of Minnesota and all other states; and deceptive trade practices under the statutory law of Minnesota, Minn. Stat. §§ 325D.43 *et seq.*

### THE PARTIES

1.      Plaintiff American Dairy Queen Corporation ("Dairy Queen") is a Delaware corporation, having a principal place of business at 7505 Metro Boulevard, Edina, Minnesota 55439.  Dairy Queen is the franchisor of the DAIRY QUEEN® system of

quick-serve restaurants. Dairy Queen and its franchisees operate more than 6,700

DAIRY QUEEN® restaurants throughout the world, including approximately 4,500

DAIRY QUEEN® restaurants in 49 of the 50 states in the U.S. (Vermont is the only

exception).

2. On information and belief, Defendant W.B. Mason Co., Inc. ("W.B.

Mason") is a Massachusetts corporation, having a principal place of business at 59 Centre

Street, Brockton, Massachusetts 02303. W.B. Mason sells and delivers, throughout the

United States, a broad array of goods, including but not limited to office supplies, furniture,

equipment, and consumables. The consumables include many food and beverage items,

including but not limited to varieties of coffee, tea, sodas, juices, bottled water, snack

foods, candy, and other treats. W.B. Mason maintains a continuous and systematic

business presence in Minnesota and regularly transacts business and sells and delivers

goods in Minnesota, including the bottled water bearing the BLIZZARD mark that is the

subject of this action, through a business location at 1720 Alexander Road, Eagan,

Minnesota 55121, and through an interactive website, www.wbmason.com, through which

customers order and pay for the aforementioned goods. In compliance with Minn. Stat. §

303, W.B. Mason is registered in Minnesota, holds a certificate of authority to do business

in Minnesota, and has appointed an agent to receive service of process in Minnesota.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action under Section 39

of the Lanham Act, 15 U.S.C. §1121, and 28 U.S.C. §§ 1331 and 1338. This Court's

jurisdiction over the state law and common law claims arises under 28 U.S.C. § 1338, because

those claims are joined with substantial and related claims under federal trademark law, and
under 28 U.S.C. § 1367, under this Court's supplemental jurisdiction.

4.      This Court has personal jurisdiction over W.B. Mason under Minn. Stat. §
543.19 because: (a) W.B. Mason is registered and holds a certificate of authority to do business
in Minnesota and has appointed an agent to receive service of process in Minnesota, pursuant to
Minn. Stat. § 303; (b) W.B. Mason maintains continuous and systematic business connections
with Minnesota, including without limitation its operation of a business location in Eagan,
Minnesota, which receives and ships goods on a regular basis, and which serves Minnesota
residents; (c) W.B. Mason regularly solicits and serves customers in this judicial district
including, without limitation, via its operation of an interactive website from which Minnesota
residents may and do order goods; and (d) W.B. Mason has, on information and belief,
transacted business in Minnesota involving the BLIZZARD trademark that is at issue in this
case and from which Dairy Queen's claims arise including, without limitation, advertising
BLIZZARD water products on its interactive website and in other ways, and shipping those
products to customers in Minnesota.

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because a
substantial part of the events giving rise to Dairy Queen's claims herein occurred in the District
of Minnesota; because W.B. Mason is an entity with the capacity to sue and be sued in its
common name under applicable law and is subject to this Court's personal jurisdiction with
respect to this civil action, and therefore resides in this judicial district, and because Dairy
Queen maintains its headquarters and conducts business under its marks at issue in this matter

in this judicial district.  Further, Dairy Queen has been, and continues to be, harmed by W.B. Mason's use of the BLIZZARD mark in this district.

## DAIRY QUEEN'S TRADEMARK RIGHTS

6.      One of the most popular and well-known menu items at DAIRY QUEEN® restaurants is the BLIZZARD® treat, consisting of soft serve ice cream blended with fruit, nuts, candy pieces, and other flavorings.  The BLIZZARD® treat is a required core menu item at all DAIRY QUEEN® locations.

7.      Current graphic iterations of the BLIZZARD® mark used by Dairy Queen include its famous red, white and blue logo, and blue container:



8.      Dairy Queen's BLIZZARD® mark (including the variant THE ORIGINAL BLIZZARD ONLY AT DQ®) is the subject of five valid and subsisting registrations in the U.S. Patent and Trademark Office ("USPTO"):

| Mark | Reg. No. | Reg. Date | First Use Date (at least as early as) | Goods/Services |
|---|---|---|---|---|
| THE ORIGINAL BLIZZARD ONLY AT DQ | 2,693,918 | 3/4/2003 | Feb. 2001 | Frozen reduced-fat ice cream soft serve for consumption on and off the premises consisting primarily of frozen reduced-fat ice cream with one or more of the following toppings, namely, candy, cookies, syrup, nut or fruit toppings. |
| BLIZZARD | 1,503,396 | 9/6/1988 | Sep. 1987 | Restaurant services. |
| BLIZZARD | 1,458,987 | 9/29/1987 | Oct. 1984 | Flavor blender machine for frozen treats. |
| BLIZZARD | 895,139 | 7/21/1970 | Jan. 1952 | Milk shakes and semi-frozen ice milk and ice cream confections. |
| BLIZZARD | 559,844 | 6/10/1952 | Jul. 1946 | Heavy bodied milkshakes. |

9.      Each of these registrations for the above marks (collectively, the "BLIZZARD® Marks") is incontestable, pursuant to 15 U.S.C. §§ 1065 and 1115(b), and is thus conclusive evidence of the registration's validity and of the validity of the mark covered by the registration, and of Dairy Queen's ownership of, and exclusive right to use, the mark covered by the registration.  A current printout of information from the

TSDR electronic database records of the USPTO showing the current status and title of each of these registrations, along with its registration certificate, is attached as Exhibit A.

10.     The BLIZZARD® product was first introduced to the public in 1946. The current form of the BLIZZARD® treat was introduced in 1985.  More than 100 million BLIZZARD® treats were sold that first year alone.   Over the past 32 years, the DAIRY QUEEN® system has introduced more than 134 different BLIZZARD® flavor varieties.

11.     Billions of BLIZZARD® treats have been sold to consumers in the United States from 1985 to the present generating billions of dollars in revenue.

12.     Dairy Queen has used its BLIZZARD® mark in commerce exclusively and extensively for more than 71 years, and BLIZZARD® has been used in connection with the current form of Dairy Queen's BLIZZARD® treat for over 32 years throughout the United States and abroad.  As a result of Dairy Queen's long-standing use of BLIZZARD®, and due to the extensive promotion and advertising of the BLIZZARD® Marks, they have become strongly associated in the minds of the U.S. and worldwide consuming public with frozen and semi-frozen treats emanating from DAIRY QUEEN® restaurants, and are symbols of premium, high quality food products.

13.     The BLIZZARD® Marks are arbitrary and inherently distinctive as applied to, and as used on and in connection with, the food products of Dairy Queen and its licensees.

14.     Dairy Queen extensively advertises and promotes the BLIZZARD® Marks and treats in all manner of media, including print advertisements, radio and television commercials, the DAIRY QUEEN® website and other websites, including Facebook,

Twitter, Instagram, and other social media sites and mobile apps, and Dairy Queen has spent substantial amounts of time and money on these advertisements and promotions. In 2017, Dairy Queen's BLIZZARD® mark was mentioned in social media .83 times per minute, or more than 1,189 times per day.

15.     Dairy Queen, through its national, regional, and local marketing, has expended a significant amount on various media, including major national television networks, promoting the BLIZZARD® product.

16.     Dairy Queen began the BLIZZARD® Flavor of the Month promotion in July 2003 and featured the first monthly "All-American" BLIZZARD® treat. The BLIZZARD® of the Month promotion still continues to feature new and returning BLIZZARD® treats each month.

17.     In 2005, Dairy Queen's BLIZZARD® treat and BLIZZARD® brand were the centerpiece of an episode of The Apprentice, the hit reality television series hosted by Donald Trump. The sixty-minute episode, originally broadcast by NBC on October 13, 2005, challenged the two contestant teams to design a new mascot to promote Dairy Queen's BLIZZARD® treat. Upon information and belief, that episode of The Apprentice was seen by more than 11 million viewers across the United States during its initial broadcast.

18.     Every year since 2006, Dairy Queen has prominently featured the BLIZZARD® treat in an annual nationwide campaign for the Children's Miracle Network ("CMN") called Miracle Treat Day. On Miracle Treat Day, participating DAIRY QUEEN® restaurants donate $1.00 or more to CMN for each BLIZZARD® treat

sold.  In 2016, DAIRY QUEEN® restaurants in the United States and Canada combined to donate more than $ 9.1 Million to CMN through Miracle Treat Day BLIZZARD® sales, point-of-sale canister donations, and related programs. More than $4.3 Million of the 2016 donations were related directly to the product sale of BLIZZARD® treats on Miracle Treat Day.

19.     The BLIZZARD® Marks were the subject of special promotions in 2010, as Dairy Queen celebrated the twenty-fifth anniversary of the current version of the BLIZZARD® treat.  Dairy Queen's "BLIZZARD-Mobile" toured 25 cities around the United States and Canada, and introduced a new "Mini" BLIZZARD® treat.  Dairy Queen spent in excess of $750,000 in 2010 in connection with the production and operation of the BLIZZARD-Mobile.  The twenty-fifth anniversary of the BLIZZARD® treat, the BLIZZARD-Mobile tour, and the "Mini" BLIZZARD® treat were extensively advertised in a wide variety of media.

20.     In 2017, Dairy Queen introduced its newest limited edition BLIZZARD® flavor, called the Guardians Awesome Mix BLIZZARD® Treat, created in partnership with one of the most anticipated MARVEL® movies of the year, *Guardians of the Galaxy Vol. 2*.  The BLIZZARD® treat was served in a themed *Guardians of the Galaxy* cup.  The movie, *Guardians of the Galaxy Vol. 2*, took in more than $850 Million dollars at the box office.  From approximately April – July, 2017, Dairy Queen sold more than 5 Million Guardians Awesome Mix BLIZZARD® Treats in the United States and Canada.

21.     Dairy Queen has a life-sized, walking BLIZZARD® treat mascot that appears at various promotions and events throughout the country.

22.     The BLIZZARD® treat has its own fan club, for which Dairy Queen maintains a web page.  The current fan base stands at 4,369,368 members.

23.     Dairy Queen has entered into co-branding arrangements for the sale of BLIZZARD® branded packaged cookies and confections.  For example, there have been OREO® BLIZZARD® Crème Chocolate Sandwich Cookies.

24.     Similarly, BLIZZARD® treats served in DAIRY QUEEN® restaurants are often blended with brand name candy or cookie pieces, including, for example, REESE'S® Peanut Butter Cup BLIZZARD® Treat, BUTTERFINGER® BLIZZARD® Treat, M&M'S® Milk Chocolate Candies BLIZZARD® Treat, and HEATH® BLIZZARD® Treat.

25.     The BLIZZARD® of the Month for February 2018 was Mint OREO® BLIZZARD® Treat:



26.     By reason of Dairy Queen's exclusive and continuous use, promotion and advertising of the BLIZZARD® Marks in the United States and throughout the world,

the BLIZZARD® Marks have become identified and recognized by consumers in the United States as marks for high quality food products originating exclusively with Dairy Queen and its licensees.

27.     A substantial portion of Dairy Queen's approximately 4,500 DAIRY QUEEN® restaurants in the United States sell bottled water branded with third party marks in close proximity to sales of, and advertising featuring, Dairy Queen's BLIZZARD® treats and the BLIZZARD® Marks.

28.     For example, DASANI® bottled water was a featured item on DAIRY QUEEN® restaurant menus in February 2018, in close proximity to BLIZZARD® treats:





## W.B. MASON'S ACTIVITIES

29.     On information and belief, W.B. Mason's business extends far beyond office furniture and supplies.  A significant portion of its revenues are derived from the sale of large quantities of food, snack, and beverage items.

30.     Among the food items sold by W.B. Mason and available for sale on its website are a wide variety of candy, confections and treats sold under numerous major brands, including, for example, OREO® cookies, REESE'S® candies, BUTTERFINGER® candies, M&M'S® candies, HEATH® candy bars, and HERSHEY'S®, NESTLÈ®, and MARS® candies.

31.     Included in the items sold by W.B. Mason is ICEE® brand squeeze candy, which utilizes depictions of frozen treats in cups on its red, white and blue packaging, visible on W.B. Mason's website:



W.B. Mason also sells JOY® brand cones and cake cups for ice cream:



32.    Among the beverage items sold by W.B. Mason and available for sale on its website are multiple brands of the following beverages: coffee, including DUNKIN' DONUTS® brand; soda, including COCA COLA® and PEPSI® products; juice, including TROPICANA® and MOTT'S, and KELLOGG'S ® SPECIAL K® milk chocolate protein shakes.

33.    W.B. Mason sells BLIZZARD brand spring water and distilled water on its website and through its other trade channels, for example:



On information and belief, these products may be, and are, purchased by businesses of any size and by individual consumers, and are consumed by individual consumers, throughout the United States, including in Minnesota.

34.     W.B. Mason's BLIZZARD spring water is sold in at least the following package sizes: 8 oz., 16.9 oz., 1 gallon, 3 gallon, and 5 gallon.  In all labeling on all sizes, BLIZZARD is the most prominent word on the label:



35.     W.B. Mason's advertising for its BLIZZARD water prominently features

BLIZZARD separate and apart from W.B. MASON'S:



36.     On or about April, 2017, Dairy Queen became aware that, notwithstanding

Dairy Queen's prior rights, W.B. Mason had filed the following applications with the

USPTO:

> Application No. 87210712 – BLIZZARD SPRING WATER, for spring water. Filed October 20, 2016. Use since September 15, 2015 alleged.

> Application No. 87210633 – WHO BUT W.B. MASON'S BLIZZARD SPRING WATER for spring water. Filed October 20, 2016. Use since September 15, 2015 alleged.

37.     On information and belief, W.B. Mason made little if any use in commerce of BLIZZARD for water prior to the date of first use alleged in the applications, i.e., September 15, 2015.  Any use prior to that date was minimal, and certainly was many, many years after Dairy Queen's BLIZZARD® Marks were in use and had become famous.

38.     Upon learning of W.B. Mason's trademark applications, counsel for Dairy Queen contacted counsel for W.B. Mason and asked that the applications be withdrawn and that W.B. Mason cease all use of BLIZZARD.  W.B. Mason refused to comply.  Thereafter, Dairy Queen instituted Opposition No. 91235851 against both applications.

39.     On information and belief, W.B. Mason intends to expand its use of BLIZZARD to products other than spring water and distilled water.

40.     On information and belief, the actual and potential trade channel and customer base for W.B. Mason's BLIZZARD products is not limited to traditional business customers but, rather, includes home-based entrepreneurs and individual consumers, via W.B. Mason's interactive website and brick-and-mortar stores.  On further information and belief, individual consumers are exposed to and consume these products after they are purchased by offices and other businesses.

## COUNT I
## TRADEMARK INFRINGEMENT IN
## VIOLATION OF 15 U.S.C. § 1114(1)(a)

41.     Dairy Queen repeats and realleges the allegations of paragraphs 1 through 40 above and incorporates those allegations herein by reference.

42.     As a separate cause of action and ground for relief, Dairy Queen alleges that W.B. Mason has been and is currently engaged in acts constituting infringement of Dairy Queen's BLIZZARD® Marks within the meaning of Section 32(1) of the Trademark Act of 1946, 15 U.S.C. § 1114(1), through W.B. Mason's use of BLIZZARD in commerce in the sale, offering for sale, distribution, or advertisement of goods in a manner that creates a likelihood of confusion, mistake, or deception.

43.     W.B. Mason's infringing conduct is causing and is likely to cause injury to the public, and is causing and is likely to cause Dairy Queen to suffer irreparable injury. Dairy Queen is entitled to damages and injunctive relief pursuant to 15 U.S.C. §§ 1114, 1116, 1117, 1118.

## COUNT II
### UNFAIR COMPETITION BY FALSE DESIGNATION
### OF ORIGIN IN VIOLATION OF 15 U.S.C. §1125(a)

44.     Dairy Queen repeats and realleges the allegations of paragraphs 1 through 43 above and incorporates those allegations herein by reference.

45.     As a separate cause of action and ground for relief, Dairy Queen alleges that W.B. Mason, by using BLIZZARD, has caused a likelihood of confusion, deception, and/or mistake as to the affiliation, connection, or association of W.B. Mason with Dairy Queen, or as to the origin, sponsorship, or approval of goods or services offered by W.B. Mason, or by Dairy Queen, in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

46.     W.B. Mason's actions constitute unfair competition by false designation of origin within the meaning of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. §

1125(a), and have caused and are likely to cause injury to the public, and have caused and are likely to cause Dairy Queen to suffer irreparable injury.  Dairy Queen is entitled to damages and injunctive relief pursuant 15 U.S.C. §§ 1116, 1117, 1118, 1125.

## COUNT III
## TRADEMARK DILUTION IN
## VIOLATION OF 15 U.S.C. §1125(c)

47.     Dairy Queen repeats and realleges the allegations of paragraphs 1 through 46 above and incorporates those allegations herein by reference.

48.     As a separate cause of action and ground for relief, Dairy Queen alleges that W.B. Mason's use of BLIZZARD and its use and attempted registration of marks that wholly incorporate BLIZZARD is likely to cause dilution by blurring, in violation of Section 43(c) of the Trademark Act of 1946, 15 U.S.C. § 1125(c).

49.     Dairy Queen's BLIZZARD® Marks are famous.  They are widely recognized by the general consuming public of the United States as a designation of source of Dairy Queen's goods and services.

50.     Dairy Queen's BLIZZARD® Marks have been exclusively and extensively used and promoted throughout the United States for many years.

51.     A substantial volume of goods and services have been sold under Dairy Queen's BLIZZARD® Marks throughout the United States.

52.     Dairy Queen's BLIZZARD® Marks enjoy a high degree of actual recognition.

53.     W.B. Mason has used BLIZZARD, BLIZZARD SPRING WATER, and WHO BUT W.B. MASON'S BLIZZARD SPRING WATER for bottled water products in commerce without authorization from Dairy Queen.

54.     W.B. Mason's applications for BLIZZARD SPRING WATER and WHO BUT W.B. MASON'S BLIZZARD SPRING WATER, and its unauthorized use in commerce of BLIZZARD, began long after Dairy Queen's BLIZZARD® Marks became famous.

55.     W.B. Mason's use of BLIZZARD, and its use and attempted registration of BLIZZARD SPRING WATER and WHO BUT W.B. MASON'S BLIZZARD SPRING WATER, is likely to cause an association arising from the similarity between those marks and Dairy Queen's BLIZZARD® Marks that impairs the distinctiveness of Dairy Queen's BLIZZARD® Marks.

56.     W.B. Mason's above referenced marks and Dairy Queen's BLIZZARD® Marks are identical and/or highly similar.

57.     Dairy Queen's BLIZZARD® Marks are highly distinctive.

58.     On information and belief, W.B. Mason intends to create an association between its above referenced marks and Dairy Queen's BLIZZARD® Marks.

59.     W.B. Mason's use of BLIZZARD and its use and attempted registration of BLIZZARD SPRING WATER and WHO BUT W.B. MASON'S BLIZZARD SPRING WATER creates a likelihood of dilution by blurring within the meaning of Section 43(c) of the Trademark Act of 1946, 15 U.S.C. §1125(c).

60.     W.B. Mason's conduct is causing and is likely to cause injury to the public, and is causing and is likely to cause Dairy Queen to suffer irreparable injury. Dairy Queen is entitled to injunctive relief pursuant 15 U.S.C. § 1125(c).

## COUNT IV
## COMMON LAW UNFAIR COMPETITION

61.     Dairy Queen repeats and realleges the allegations of paragraphs 1 through 60 above and incorporates those allegations herein by reference.

62.     As a separate cause of action and ground for relief, Dairy Queen alleges that W.B. Mason has been and is currently engaged in acts constituting infringement of Dairy Queen's BLIZZARD® Marks under the common law of the State of Minnesota and all states through W.B. Mason's use of BLIZZARD in commerce in Minnesota and other states in the sale, offering for sale, distribution, or advertisement of goods in a manner that creates a likelihood of confusion, mistake, or deception.

63.     W.B. Mason's infringing conduct is causing and is likely to cause injury to the public, and is causing and is likely to cause Dairy Queen to suffer irreparable injury. Dairy Queen is entitled to damages and injunctive relief pursuant to the common law of Minnesota and all states.

64.     Dairy Queen repeats and realleges the allegations of paragraphs 1 through 63 above and incorporates those allegations herein by reference.

65.     As a separate cause of action and ground for relief, Dairy Queen alleges that W.B. Mason, by using BLIZZARD, has caused a likelihood of confusion, deception, and/or mistake as to the affiliation, connection, or association of W.B. Mason with Dairy

Queen, or as to the origin, sponsorship, or approval of goods and services offered W.B. Mason, or by Dairy Queen, in violation of the common law of the State of Minnesota and all states.

66.     W.B. Mason's actions constitute unfair competition and false designation of origin under the common law of Minnesota and all states, and have caused and are likely to cause injury to the public, and have caused and are likely to cause Dairy Queen to suffer irreparable injury.  Dairy Queen is entitled to damages and injunctive relief under the common law of Minnesota and all states.

## COUNT V
## DECEPTIVE TRADE PRACTICES IN VIOLATION
## OF MINN. STAT. §§ 325D.44

67.     Dairy Queen repeats and realleges the allegations of paragraphs 1 through 66 above and incorporates those allegations herein by reference.

68.     As a separate cause of action and ground for relief, Dairy Queen alleges that W.B. Mason, by using BLIZZARD, causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, or causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by Dairy Queen, within the meaning of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43 et seq., and in violation of .Minn. Stat. § 325D.44.

69.     W.B. Mason's actions constitute willful deceptive trade practices within the meaning of Minn. Stat. §§ 325D.43 et seq.  Dairy Queen is likely to be damaged by W.B.

Mason's actions, and is entitled to an injunction, costs, and attorneys' fees, pursuant to Minn. Stat. 325D.45.

## PRAYER FOR RELIEF

WHEREFORE, Dairy Queen requests that the Court enter an order and judgment against W.B. Mason:

A.    Permanently enjoining and restraining W.B. Mason and its principals, officers, directors, shareholders, partners, agents, servants, employees, parents, subsidiaries, and affiliates, and all persons acting in active concert or participation with any of them, from:

    (1)    Using the marks BLIZZARD, BLIZZARD SPRING WATER, WHO BUT W.B. MASON'S BLIZZARD SPRING WATER, or any other mark confusingly similar to, or which is likely to dilute the distinctiveness of, Dairy Queen's BLIZZARD® Marks, in connection with spring water, distilled water, any beverage, any food, or any goods or services related to those of Dairy Queen;

    (2)    Representing by any means whatsoever, directly or indirectly, or doing any other acts or things calculated or likely to cause confusion, mistake or deception among members of the public or members of the trade as to the source, sponsorship, affiliation or approval of W.B. Mason's goods or services;

B.      Directing that W.B. Mason, at its own expense, recall and destroy all labels, marketing, promotional, and advertising materials, and edit all websites and social media presences or posting, and all domain names or web page URLs or sub-URLs, that bear or incorporate any mark or design featuring the marks BLIZZARD, BLIZZARD SPRING WATER, WHO BUT W.B. MASON'S BLIZZARD SPRING WATER, or any other mark confusingly similar to Dairy Queen's BLIZZARD® Marks;

C.      Directing that W.B. Mason, at its own expense, expressly abandon its applications for BLIZZARD SPRING WATER (Application No. 87210712) and WHO BUT W.B. MASON'S BLIZZARD SPRING WATER (Application No. 87210633) or, alternatively, directing the USPTO to refuse said applications;

D.      Directing that, within thirty (30) days from the date of the order, W.B. Mason deliver to Dairy Queen's attorneys or representatives an affidavit testifying that all labels, signs, prints, packages, molds, plates, dies, wrappers, receptacles, advertisements, documents, and electronic media in its possession or under its control bearing the infringing marks have been destroyed;

E.      Directing W.B. Mason to file with this Court and to serve upon Dairy Queen, within thirty (30) days after issuance of an injunction in this action, a written report, under oath, setting forth in detail the manner in which W.B. Mason has complied with the injunction;

F.      Awarding Dairy Queen as damages W.B. Mason's profits generated in connection with its use of the infringing marks;

G.      Awarding Dairy Queen its reasonable attorneys' fees and costs incurred in this action; and

H.      Awarding Dairy Queen such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated:  March 12, 2018

**GRAY, PLANT, MOOTY, MOOTY**
   **& BENNETT, P.A.**

By:   s/Dean C. Eyler
   Dean C. Eyler (MN Bar # 267491)
   Molly R. Littman (MN Bar # 398449)
   500 IDS Center
   80 South 8th Street
   Minneapolis, MN  55402
   Phone: 612-632-3000
   Fax: 612-632-4444
   dean.eyler@gpmlaw.com
   molly.littman@gpmlaw.com

   Sheldon H. Klein*
   600 New Hampshire Ave, NW
   Suite 700
   Washington, DC 20037
   Phone: 202-295-2200
   sheldon.klein@gpmlaw.com
   *Pro Hac Vice Application to be
   Submitted

**ATTORNEYS FOR PLAINTIFF**
**AMERICAN DAIRY QUEEN**
**CORPORATION**

GP:4841-4308-0799 v1