# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| American Dairy Queen Corporation,<br><br>Plaintiff,<br><br>v.<br><br>W.B. Mason Co., Inc.,<br><br>Defendant. | Case No. 18-cv-693 (SRN/ECW)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Dean Engler and Molly Littman, Gray Plant Mooty, 80 South 8th Street, Suite 500, Minneapolis, MN 55402, and Sheldon Klein, Gray Plant Mooty, 600 New Hampshire Avenue, NW, Suite 700, Washington, DC 20037, for Plaintiff.

Jason Kravitz, Nixon Peabody LLP, 100 Summer Street, Boston, MA 02110, and Thomas Johnson, Merchant & Gould PC, 80 South 8th Street, Suite 3200, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

Defendant, W.B. Mason Co., Inc. ("W.B. Mason") moves to dismiss this action for lack of personal jurisdiction and improper venue or, in the alternative to transfer the case to the District of Massachusetts. Plaintiff American Dairy Queen Corporation ("Dairy Queen") responds that the Eighth Circuit's decision in *Knowlton v. Allied Van Lines*, 900 F.2d 1196 (8th Cir. 1990) precludes dismissal and there are no circumstances that warrant transfer. Because the Court finds that *Knowlton* controls this case and there are no circumstances that warrant transfer, it denies W.B. Mason's motion.

## I. Factual and Procedural Background

Over the years, Dairy Queen has become famous for its popular soft serve ice

cream blended with fruit, nuts, or candy, aptly named "the Blizzard." (Compl. [Doc. No. 1] ¶ 6.) Emblazoned on every Blizzard is a graphic image of the word "Blizzard" in blue, surrounded by a red border and white icicles. (*Id.* ¶ 7.) This mark is the subject of five valid registrations at the U.S. Patent and Trademark Office, the first of which was issued to Dairy Queen over thirty years ago. (*Id.* ¶ 8.)

In recent years, it appears that W.B. Mason expanded beyond its office furniture and supplies business to food, snack, and beverage items. (*Id.* ¶ 29.) It now sells BLIZZARD brand spring water and distilled water nationally. (*Id.* ¶ 33.) The bottle's logo is similarly red, white, and blue, although differently configured. (*Id.*)

To support its use of the term BLIZZARD, W.B. Mason filed two federal trademark applications in 2016: 1) BLIZZARD SPRING WATER (Serial No. 87210712) and 2) WHO BUT W.B. MASON'S BLIZZARD SPRING WATER (Serial No. 87210633). Dairy Queen promptly filed an opposition with the Trademark Trial and Appeal Board opposing the registration of both marks arguing that they are likely to cause confusion and are likely to dilute Dairy Queen's BLIZZARD mark. (*Id.* ¶ 36–38.) Unable to resolve their differences, Dairy Queen filed this lawsuit on March 12, 2018. In response, W.B. Mason filed a declaratory judgment action in the District of Massachusetts three days later, on March 15, 2018. In its suit, Dairy Queen accuses W.B. Mason of trademark infringement, trademark dilution, deceptive trade practices, and both statutory and common law unfair competition.[1] (*Id.* ¶ 41–69.)

---

[1] Count I alleges trade infringement in violation of 15 U.S.C. § 1114(1)(a). (Compl. ¶ 41–43.) Count II alleges unfair competition by false designation in violation of 15

In this motion, W.B. Mason challenges this Court's personal jurisdiction and venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). (Def.'s Mot. to Dismiss [Doc. No. 12] at 2.) Dairy Queen is a Delaware corporation with its principal place of business in Minnesota, while W.B. Mason is a Massachusetts corporation with its principal place of business in Massachusetts. (Compl. ¶¶ 1, 2.)

Dairy Queen alleges that W.B. Mason is registered as a corporation under Minn. Stat. § 303, which bestows upon foreign corporations the same burdens and benefits as domestic corporations and that its registration is current. (Compl. ¶ 4); *Ally Bank v. Lenox Financial Mortgage Corp.*, Civ. No. 16-2387, 2017 WL 830391, at *2–3 (D. Minn. Mar. 2, 2017); (*Id.* at ¶ 4 (citing Minn. Stat. § 303).) Dairy Queen further alleges that W.B. Mason has held the requisite certificate of authority and has maintained a registered agent for service of process in Minnesota since 2014. (Compl. ¶ 4.) Accordingly, Dairy Queen argues that, by maintaining its Minn. Stat. § 303 filing and designating a registered agent, WB. Mason has consented to the general personal jurisdiction of the court. (Compl. ¶ 4); *Knowlton*, 900 F.2d at 1199.

W.B. Mason responds that a more restrictive interpretation of Minn. Stat. § 303 is needed in light of the Supreme Court's post-*Knowlton* decisions in *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915 (2011) and *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014). (Def.'s Reply Br. at 11.) W.B. Mason urges the Court to hold that a party's

---

U.S.C. § 1125(a). (*Id.* ¶ 41–43.) Count III alleges trademark dilution in violation of 15 U.S.C. § 1125(c). (*Id.* ¶ 47–60.) Count IV alleges common law unfair competition. (*Id.* ¶ 61–66.) Count V alleges deceptive trade practice in violation of Minn. Stat. § 325D.44. (*Id.* ¶ 67–69.)

registration under Minn. Stat. § 303 does not imply, without more, its consent to general personal jurisdiction in Minnesota. (*Id.* at 10.)

In its motion, W.B. Mason also argues that the Court cannot exercise specific personal jurisdiction over it. (*Id.* at 17.) W.B. Mason argues that because the sale of BLIZZARD water has no connection to Minnesota, there is not a strong enough connection between the forum and the underlying controversy for this Court to exercise specific personal jurisdiction over it. (Def.'s Mot. to Dismiss at 9.) First, W.B. Mason asserts that it has not sold any of its BLIZZARD water in Minnesota. (*Id.* at 10.) Second, W.B. Mason claims that it has not "uniquely or expressly" marketed its products, including BLIZZARD water, to Minnesota customers. (*Id.* at 11.) And lastly, W.B. Mason contends that Dairy Queen's injury is "insufficient on its own to establish specific personal jurisdiction." (*Id.*)

## II.     Analysis

### A.     Standard of Review

To survive a motion to dismiss for lack of personal jurisdiction, "a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (citation and alterations omitted). This evidentiary standard is "minimal," although the pleadings may be "tested" with affidavits and exhibits supporting and opposing a Rule 12(b)(2) motion to dismiss. *Id.* at 592. A court must resolve all factual conflicts in the plaintiff's favor. *Fastpath, Inc. v. Arbela Techs.*

*Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). "[T]he action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to [the plaintiff], is sufficient to support a conclusion that the exercise of personal jurisdiction over [the defendant] is proper." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015).

### B.     The Law of General Personal Jurisdiction

#### 1.     Minnesota's Long Arm Statute and Due Process

A court may exercise personal jurisdiction over a nonresident defendant if (1) Minnesota's long-arm statute, Minn. Stat. § 543.19, is satisfied, and (2) the exercise of personal jurisdiction does not offend due process. *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693 (8th Cir. 2003). Because Minnesota's long-arm statute extends the personal jurisdiction of Minnesota courts as far as due process allows, *Minnesota Min. & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir. 1995), this Court need only evaluate whether the exercise of personal jurisdiction comports with the requirements of due process. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015).

A court may exercise personal jurisdiction over litigating parties either under a theory of specific or general jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In 2014, the Supreme Court in *Daimler* clarified that a court may only exercise general personal jurisdiction if a defendant's contacts are "so continuous and systematic as to render [it] essentially at home in the forum." 471 U.S. at 117, 127 (citing *Goodyear*, 564 U.S. at 919). The Supreme Court explained that defendant's place of

5

incorporation and principle place of business are the "paradigm all-purpose forums." *Id.*

at 137 (citing *Goodyear*, 564 U.S. at 924.) Moreover, foreign corporations should be able

to engage in business transactions with some "minimum assurances as to where that

conduct will and will not render them liable to suit." *Daimler*, 571 U.S. at 139 (quoting

*Burger King Corp*, 471 U.S. at 472). The Supreme Court found that it is only in an

"exceptional case" that a "corporation's operations in a forum other than its formal place

of incorporation or principal place of business may be so substantial and of such a nature

as to render the corporation at home in that State," so as to allow a court to exercise

general personal jurisdiction. *Id.* at 139, n.19.

### 2. Consent to Personal Jurisdiction

However, it is well-established that consent is an independent basis for the

exercise of personal jurisdiction. *Ins. Corp. of Ireland v. Compagnie des Bauxites de

Guinee*, 456 U.S. 694, 703 (1982). Consent to personal jurisdiction may be established in

a number of ways, including as a condition of performing some activity in the state.

*See Hess v. Pawloski,* 274 U.S. 352, 355–56 (1927).

In Minnesota, before a corporation can transact business, it must "hol[d] a

certificate of authority so to do. . . ." Minn. Stat. § 303.03. To receive the certificate,

Minn. Stat. § 303.10 requires every foreign corporation to "have a registered office and

. . . a registered agent . . ." and Minn. Stat. § 303.13 mandates that "[a] foreign

corporation . . . be subject to service of process . . . by service on its registered agent." If,

upon inspection, a foreign corporation has met these requirements, it will be issued a

certificate of authority. Minn. Stat. § 303.08. "After the issuance of a certificate of

authority," Minn. Stat. § 303.09 provides that "the corporation shall possess . . . the same rights and privileges [of] a domestic corporation . . . and shall be subject to the laws of this state."

The Minnesota Supreme Court has held that there is "no constitutional defect in the assertion of [general personal] jurisdiction based on consent to service of process" in *Rykoff-Sexton, Inc. v. Am. Appraisal Assocs., Inc.*, 469 N.W. 2d 88, 90–91 (Minn. 1991). In fact, the Minnesota Supreme Court held that consent to personal jurisdiction "exacted as a condition of doing business in Minnesota, [was] one of the time-honored bases of personal jurisdiction" and was "not constitutionally suspect." *Id.* at 91.[2]

In *Knowlton*, the Eighth Circuit affirmed the Minnesota Supreme Court's interpretation of Minn. Stat. § 303. 900 F.2d at 1200. The Eighth Circuit found that a corporation's decision to maintain its Minn. Stat. § 303 filing and designate a registered agent to receive service of process on its behalf in Minnesota was evidence of the corporation's consent to general personal jurisdiction. In that case, a corporate defendant—incorporated in Delaware and headquartered in Illinois—was subject to general personal jurisdiction in Minnesota for a car accident that took place in Iowa. *Id.* at 1199. The Eighth Circuit held that consent by registration statutes was the type of consent that was a "traditionally recognized and [a] well-accepted species of general consent." *Id.* at 1200. The court also noted that Minn. Stat. § 303 had "no words of limitation to indicate that this type of service is limited to claims arising out of activities

---

[2]     Although *Rykoff-Sexton, Inc.* was decided before both *Goodyear* and *Daimler*, the Minnesota Supreme Court has not reversed its decision in the almost thirty-years since.

within the state." *Id.* at 1999. And the court determined that "[t]he whole purpose" of

designating an agent for service of process was to "make a nonresident suable in the local

courts."[3] *Id.*

Thus, although registered corporations in Minnesota receive many advantages, in

return, according to the Minnesota Supreme Court and the Eighth Circuit, they are

subject to general personal jurisdiction within the state. *Knowlton*, 900 F.2d at 1200;

*Rykoff-Sexton, Inc.*, 469 N.W. 2d at 90–91.

W.B. Mason argues that, despite the Eighth Circuit's decision in *Knowlton*,

registration to do business under Minn. Stat. § 303 alone cannot satisfy the dictates of due

process in light of the Supreme Court's recent decisions in *Goodyear* and *Daimler*.

(Def.'s Reply Br. at 1.) It argues that consent jurisdiction pursuant to Minn. Stat. § 303 is

"unduly broad" and must be "interpreted more narrowly to comply with due process."

(*Id.* at 5.) Moreover, it argues that Minn. Stat. § 303 offers no notice to foreign

corporations that they are consenting to general personal jurisdiction when they register.

(*Id.*)

This Court has previously held that neither *Goodyear* nor *Daimler* call into

question whether *Knowlton* remains good law. In *Ally Bank v. Lenox Fin. Mortg. Corp.*,

---

3       Dairy Queen has sufficiently pled that W.B. Mason currently maintains a
registered agent for service of process in Minnesota. Therefore, the exception to
*Knowlton* recognized in *McGill v. Conwed Corp.*, No. CV 17-01047 (SRN/HB), 2017
WL 4534827, at *1 (D. Minn. Oct. 10, 2017), does not apply. (In that case, the court held
that when the defendant had not maintained a registered agent for service of process in
Minnesota under Minn. Stat. § 303 for at least seven years, it was not subject to general
personal jurisdiction.)

the court held that *Knowlton* was still good law despite the Supreme Court's recent jurisprudence. 2017 WL 830391, at \*3. The court found that *Daimler* did nothing to "upset the well-settled law regarding what acts may operate to imply consent." *Id.* Instead, it merely "addressed the limits of general jurisdiction over a foreign corporation, not the limits of a defendant's capacity to consent . . . ." *Id.*

Again, in *Richie Capital Management, Ltd. v. Costco Wholesale Corporation*, 2017 WL 4990520 (D. Minn. Oct. 30, 2017), this Court held that when an out-of-state corporation is able to be served in Minnesota because it appointed a registered agent, "the foreign corporation consents to the 'jurisdiction of Minnesota courts for any cause of action, whether or not arising out of activities within the state.'" *Id.* at \*2 (citing *Knowlton*, 900 F.2d at 1200).

Courts in other states have also upheld consent jurisdiction under corporate registration statutes, even after *Goodyear* and *Daimler*. *See, e.g.*, *Matthews v. BNSF Ry. Co.*, No. 16-03211-CV-S-RK, 2016 WL 9023002, at \*3 (W.D. Mo. Sept. 30, 2016), *on reconsideration*, No. 16-03211-CV-S-RK, 2017 WL 2266891 (W.D. Mo. May 23, 2017) (holding that *Knowlton* was consistent with long-standing Supreme Court precedent); *Mitchell v. Eli Lilly and Co.*, 159 F. Supp. 3d 957, 967 (E.D. Mo. 2016) (holding that Missouri registration papers were sufficient to establish consent to general personal jurisdiction); *Steadfast Ins. Co. v. Schindler Elevator Corp.*, No. 16-03215-CV-S-RK, 2016 WL 7332992, at \*2 (W.D. Mo. Dec. 16, 2016) (holding that a corporation consents to jurisdiction by registering to do business in Missouri and appointing an agent for service of process); *Hovsepian v. The Adel Wiggins Grp.*, No. 4:16-CV-00414-CEJ, 2016

WL 6577105, at *3 (E.D. Mo. Nov. 7, 2016) (holding that a Missouri statute established

consent by registration because there is no "substantial ground for a difference of

opinion" regarding *Knowlton*'s applicability); *Regal Beloit Am., Inc. v. Broad Ocean*

*Motor LLC*, No. 4:16-CV-00111-JCH, 2016 WL 3549624, at *5 (E.D. Mo. June 30,

2016) (holding that *Knowlton* remains controlling even after *Daimler*); *Chalkey v.*

*Smithkline Beecham Corp.*, No. 4:15 CV 1838 DDN, 2016 WL 705134, at *4 (E.D. Mo.

Feb. 23, 2016) (holding that because the Missouri consent by registration statute has the

same effect as the Minnesota statute, *Knowlton* continues to be good law); *Trout v.*

*SmithKline Beecham Corp.*, No. 4:15 CV 1842 CDP, 2016 WL 427960, at *1 (E.D. Mo.

Feb. 4, 2016) (holding that Missouri law allows for the exercise of personal jurisdiction

over a corporation that has consented by registering to do business in the state and

designating an agent for service of process); *Consol. Infrastructure Grp., Inc. v. USIC,*

*LLC*, No. 8:16CV472, 2017 WL 2222917, at *7 (D. Neb. May 18, 2017) (holding that

designating an agent for service of process was "[o]ne of the most solidly established

ways of giving . . . consent"); *Perrigo Co. v. Merial Ltd.*, No. 8:14-CV-403, 2015 WL

1538088, at *7 (D. Neb. Apr. 7, 2015) (holding that *Daimler* is consistent with

Nebraska's consent by registration statute); *Basham v. Am. Nat. County Mut. Ins. Co.*,

2015 WL 1034186, at *4–5 (W.D. Ark. Mar. 10, 2015) (holding that appointment of an

agent and application for a certificate of authority to transact business amounted to

consent to general personal jurisdiction in Arkansas); *Spanier v. Am. Pop. Corn Co.*,

2016 WL 1465400, at *4 (N.D. Iowa Apr. 14, 2016) (holding that registration in Iowa

and maintenance of agents for service of process was enough to consent to general

personal jurisdiction and that "*Daimler* and *Goodyear* do not *sub silentio* overturn or

obviate *Knowlton*"); *Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 817 F.3d 755, 768

(Fed. Cir. 2016) (holding that *Daimler* did not overrule the line of precedent that supports

the idea that consent is independent from general personal jurisdiction); *Otsuka Pharm.*

*Co. v. Mylan Inc.*, 106 F. Supp. 3d 456 (D.N.J. 2015) (holding that registration to do

business in New Jersey was sufficient consent to allow exercise of general personal

jurisdiction).

Other courts across the country and within the Eighth Circuit, however, have

found that implied consent under corporate registration statutes is irreconcilable with

*Daimler* and *Goodyear*. Some courts have attempted to distinguish *Knowlton* by holding

that a particular state's consent by registration statute is factually dissimilar from

Minnesota's. For example, in *Keeley v. Pfizer Inc.*, No. 4:15CV00583 ERW, 2015 WL

3999488 (E.D. Mo. July 1, 2015), the court held that Missouri statutes requiring

registration with the state and the maintenance of a registered agent do not mention

service of process at all.

Several courts, however, have held directly that, in light of the Supreme Court's

decisions in *Goodyear* and *Daimler*, registration under a state's corporate registration

statute, without more, is inadequate to constitute consent to general personal jurisdiction.

Most notably, the Second Circuit Court of Appeals in *Brown v. Lockheed Martin Corp.*,

814 F.3d 619 (2d Cir. 2016), held that:

> Finally, were we to accept Brown's interpretation of Connecticut's business
> registration statute, we would risk unravelling the jurisdictional structure
> envisioned in *Daimler* and *Goodyear* based only on a slender inference of

consent pulled from routine bureaucratic measures that were largely designed for another purpose entirely.

In *Daimler,* the Court criticized as "unacceptably grasping" plaintiffs' request that it "approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business." *Id.* at 761 (internal quotation marks omitted). It explained, "If Daimler's California activities sufficed to allow adjudication of this . . . case in California, the same global reach would presumably be available in every other State in which [the subsidiary's] sales are sizable." *Id.* The Court rejected such an "exorbitant exercise[ ] of all-purpose jurisdiction." *Id.*

Brown's interpretation of Connecticut's registration statute is expansive. It proposes that we infer from an ambiguous statute and the mere appointment of an agent for service of process a corporation's consent to general jurisdiction, creating precisely the result that the Court so roundly rejected in *Daimler.* It appears that every state in the union—and the District of Columbia, as well—has enacted a business registration statute. *See* Tanya J. Monestier, *Registration Statutes, General Jurisdiction, and the Fallacy of Consent,* 36 Cardozo L. Rev. 1343, 1363–65 & nn. 109 & 111–12 (2015) (listing statutes). States have long endeavored to protect their citizens and levy taxes, among other goals, through this mechanism. If mere registration and the accompanying appointment of an in-state agent—without an express consent to general jurisdiction—nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler's* ruling would be robbed of meaning by a back-door thief.

*Id.* at 639–40; *see also Genuine Parts Co. v. Cepec*, 137 A.3d 123, 138 (Del. 2016);

*Alvarracin v. Volume Servs, Inc.*, 2017 WL 1842701, at \*2 (W.D. Mo. May 4, 2017);

*MacCormack v. Adel Wiggins Grp.*, No. 4:16-CV-414-CEJ, 2017 WL 1426009, at \*3

(E.D. Mo. Apr. 21, 2017); *Addelson v. Sanofi*, No. 4:16CV01277 ERW, 2016 WL

6216124, at \*4 (E.D. Mo. Oct. 25, 2016); *Beard v. Smithkline Beecham Corp.*, 15-cv-

1833, 2016 WL 1746113, at \*2 (E.D. Mo. May 3, 2016); *Neeley v. Wyeth LLC*, 4:11 CV

325 JAR, 2015 WL 14569984, at \*3 (E.D. Mo. Mar. 30, 2015); *Segregated Account of*

*Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 376 Wis.2d 528 (2017);

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015).

The Court finds that, although persuasive arguments can be made that the holding of *Knowlton* is not reconcilable with the narrowing of the boundaries of due process that govern an analysis of minimum contacts and general personal jurisdiction under *Goodyear* and *Daimler*, this Court nonetheless remains bound by *Knowlton* which is controlling in this case. The Supreme Court in *Goodyear* and *Daimler* did not consider "the limits of a defendant's capacity to consent to general personal jurisdiction." *Ally Bank*, 2017 WL 830391, at \*3. It is for the Supreme Court to address consent by registration statutes in light of its new jurisprudence on general personal jurisdiction and/or for the Eighth Circuit to reconsider *Knowlton* in light of this changing view of the law.

As *Knowlton* makes clear, consent is an independent basis for jurisdiction, wholly separate from the due process considerations that govern an analysis of minimum contacts. A company that could not otherwise be subject to the general personal jurisdiction of this Court, because it lacks systematic and continuous contacts and cannot be said to be "at home" in this forum, may nonetheless consent to jurisdiction in the forum. *Knowlton* has been good law since 1991, alerting any foreign corporation who registers under Minn. Stat. § 303, that by doing so, they are consenting to general personal jurisdiction in the forum.

**C.     Venue**

W.B. Mason further moves to dismiss this action pursuant to 28 U.S.C. § 1406, arguing that venue in Minnesota is improper because this Court does not have personal jurisdiction over it. (Def.'s Mot. to Dismiss at 12.) When deciding a motion to dismiss for improper venue, a court "must construe all facts in the light most favorable to the non-moving party, and take the facts alleged in the complaint as true." *Transocean Grp. Holdings Pty Ltd. v. S. Dakota Soybean Processors, LLC*, 505 F. Supp. 2d 573, 575 (D. Minn. 2007).

Under 28 U.S.C. § 1391(a), venue is proper in "a judicial district where any defendant resides . . . ." For venue purposes, a defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1392 (8th Cir. 1991) (citing 28 U.S.C. § 1391(c)). Here, the Court has found that W.B. Mason is subject to personal jurisdiction in Minnesota by maintaining its Minn. Stat. § 303 status with the Minnesota Secretary of State and registering an agent for service of process. Therefore, venue is proper.

## D. Transfer

Under Eighth Circuit precedent, a motion to transfer "should not be freely granted." *In re Mile Ltd.*, 692 F. 2d 56, 61 (8th Cir. 1982). "[F]ederal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking transfer under section 1404(a) typically bears the burden of proving that transfer is warranted." *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010).

Section 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in

the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).

In cases where two courts have concurrent jurisdiction, the first court in which jurisdiction attached has presumed priority to consider the case. *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985). But this priority can be forfeited where a "compelling circumstance" is present. *Id.* (internal citation omitted). Such compelling circumstances may include: "(1) the first filing party acted in bad faith;[4] (2) the first-filing party raced to the courthouse to preempt a suit by the second-filing party when they were on notice that the second-filing party was going to imminently file suit; and (3) the first-filing party's suit was for declaratory judgment." *Motorscope, Inc. v. Precision Tune, Inc.*, 2012 WL 4742278, at *3 (citing *Anheuser-Busch, Inc. v. Supreme Int'l Corp.*, 167 F.3d 417, 419 (8th Cir. 1999)). Despite the important considerations the first-filed rule provides, it does not "trump" the transfer analysis under 1404(a). *Terra Int'l, Inc.*, 119 F.3d at 697, n.12. "[W]hen a transfer analysis under section 1404(a) dictates that a case should

---

[4]     Indications of bad faith may include a plaintiff: "(1) filing a suit in an unnatural forum; (2) lulling the opposing party into thinking he would not file a lawsuit; or (3) secretly fil[ing] the first-filed declaratory judgment . . . to preempt the defendant's choice of forum when it later files suit." *Hearth & Home Techs., Inc. v. J & M Distrib., Inc.*, No. 12-CV-00686 SRN/TNL, 2012 WL 5995232, at *5 (D. Minn. Nov. 30, 2012) (internal citations omitted).

be transferred, this [too] constitutes a 'compelling circumstance' that warrants an abrogation from the first-filed rule." *Id.*

W.B. Mason argues that this action should be transferred to the United States District Court for the District of Massachusetts under Section 1404(a). (Def.'s Mot. to Dismiss at 19.) Neither party disputes that Dairy Queen was the first party to file and it chose to do so in Minnesota. Shortly thereafter, W.B. Mason filed a parallel action in Massachusetts.[5] *W.B. Mason Co., Inc. v. Am. Dairy Queen Corp.*, 18-cv-10488 (D. Mass. Mar. 15, 2018) ("Massachusetts Action"). Thus, the first-filed rule applies in this case. Yet, W.B. Mason has failed to state any compelling circumstances that would warrant a transfer to Massachusetts. W.B. Mason has not sufficiently argued that Dairy Queen acted in bad faith, that Dairy Queen raced to the courthouse as a result of learning W.B. Mason was going to file, or that Dairy Queen sought a declaratory judgment against W.B. Mason. Moreover, W.B. Mason has not adequately stated that it is more convenient for the parties or witnesses to litigate in Massachusetts or that the interests of justice would be served in doing so. Thus, transfer is not appropriate.

## III.    Conclusion

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

---

[5]     The Massachusetts Action involves the same parties and substantially the same issues, as W.B. Mason has moved for a declaration of non-infringement and no dilution of the Blizzard mark. (Def.'s Mot. to Dismiss at 14.)

16

1. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Venue, or

   In the Alterative for Transfer, [Doc. No. 10] is **DENIED.**


Dated: January 8, 2019                              s/ Susan Richard Nelson

                                                    SUSAN RICHARD NELSON
                                                    United States District Judge