# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| American Dairy Queen Corporation, | Case No. 18-cv-0693 (SRN/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| W.B. Mason Co., Inc., | |
| Defendant. | |

This matter is before the Court on Defendant W.B. Mason Co., Inc.'s ("W.B. Mason" or "Defendant") Motion to Strike Portions of ADQ's Expert Report of David W. Stewart, Ph.D. (Dkt. 92) ("Stewart Report Motion") and Motion to Strike Portions of ADQ's Supplemental Expert Report of Erich Joachimsthaler, Ph.D. (Dkt. 100) ("Joachimsthaler Report Motion") (collectively, "Motions to Strike"). For the reasons below, the Court denies the Motions to Strike.

## I.     BACKGROUND

In this action, Plaintiff American Dairy Queen Corp. ("Plaintiff" or "Dairy Queen") accuses W.B. Mason of trademark infringement, trademark dilution, deceptive trade practices, and statutory and common law unfair competition. (Dkt. 1 ¶¶ 41-69; *see also* Dkt. 29 at 2.[1]) As set forth in more detail in U.S. District Judge Susan Richard Nelson's January 8, 2019 Opinion and Order denying W.B. Mason's motion to dismiss or transfer, Dairy Queen's claims are directed at W.B. Mason's BLIZZARD brand spring

---

[1]     Unless otherwise noted, all page numbers refer to the CM/ECF pagination.

water and Dairy Queen's rights with respect to its BLIZZARD trademark. (*See* Dkt. 29 at 1-2.)

Under the Scheduling Order in effect at the relevant time, the deadline for expert disclosures by the party with the burden of proof was August 7, 2020. (Dkt. 87 at 2.) The deadline for expert disclosures by the responding party was August 28, 2020. (*Id.*) The deadline for rebuttal expert disclosures was September 11, 2020 (*id.*), but counsel for the parties agreed to extend that deadline by one week, to September 18, 2020 (Dkt. 95-2, Ex. D at 2-3).[2] The deadline for expert discovery, including depositions, was October 9, 2020. (Dkt. 87 at 2.)

On August 15, 2019—well before the deadline for expert disclosure by the party with the burden of proof—Dairy Queen served the Report of E. Deborah Jay, Ph.D. ("Jay Report") in support of its trademark dilution claim, in which Dr. Jay describes a survey she conducted. (*See* Dkt. 94 at 3; Dkt. 117 at 4.) On August 7, 2020, the deadline for opening expert disclosures, Dairy Queen served the Report of Erich Joachimsthaler, Ph.D. ("Joachimsthaler Report"). (*See* Dkt. 96, Ex. B at 2.[3]) On August 28, 2020, the

---

[2] This agreement was reached in emails dated August 30 through September 1, 2020. (Dkt. 95-2, Ex. D at 2-3.) W.B. Mason agreed "on the condition that [Dairy Queen] agree that any rebuttal reports [Dairy Queen] submits shall not exceed the scope of a proper rebuttal." (Dkt. 95-2, Ex. D at 2.) W.B. Mason contends that Dairy Queen "submitted four new expert reports that greatly exceed the scope of the opinions initially offered by Dr. Joachimsthaler in support of ADQ's case-in-chief." (Dkt. 94 at 4 n.3; *see* Dkt. 102 at 3 (same).) In view of the Court's conclusion that W.B. Mason had a legitimate basis for believing the reports fell within the scope of proper rebuttal, the Court finds the agreement does not support exclusion.

[3] The Joachimsthaler Report was filed by W.B. Mason in connection with both Motions to Strike, at Docket No. 96 (with Stewart Report Motion) and at Docket No. 104-1 (with Joachimsthaler Report Motion).

deadline for expert disclosures by the responding party, W.B. Mason served four expert reports, including the Expert Report of Joel H. Steckel, Ph.D. ("Steckel Report") (*see* Dkt. 96-1, Ex. C[4]), the Expert Report of Dr. Wayne D. Hoyer ("Hoyer Report") (*see* Dkt. 111-1, Ex. B), and the Expert Report of Sarah Butler (*see* Dkt. 115, Ex. A). The Steckel Report criticized aspects of the Jay Report and the Joachimsthaler Report (*see, e.g.*, Dkt. 96-1, Ex. C ¶¶ 21-24, 45, 139-40), and the Hoyer Report criticized aspects of the Joachimsthaler Report (*see* Dkt. 111-1, Ex. B ¶¶ 26-46). On September 4, 2020, the Court entered an Order extending the deadline for rebuttal expert disclosures to September 18, 2020, and the deadline for expert discovery, including depositions, to November 13, 2020 based on the parties' Stipulation. (Dkt. 91 at 1; *see* Dkt. 89 (Stipulation).) On September 18, 2020, Dairy Queen submitted the Expert Rebuttal Report of David W. Stewart, Ph.D. ("Stewart Report") (*see* Dkt. 95-1, Ex. A) and the Supplemental Expert Report of Erich Joachimsthaler, Ph.D. ("Joachimsthaler Supplemental Report") (*see* Dkt. 104, Ex. A) (collectively, the "Challenged Reports").

W.B. Mason deposed Dr. Stewart on November 6, 2020 (Dkt. 114-1, Ex. B) and Dr. Joachimsthaler on November 9, 2020 (Dkt. 103-3, Ex. E; Dkt. 110-2, Ex. D). Dairy Queen also deposed W.B. Mason's experts, deposing Ms. Butler on October 26, 2020; Dr. Hoyer on November 5, 2020; and Dr. Steckel on November 11, 2020. (*See* Dkt. 117 at 10; Dkt. 109 at 13.)

---

[4] The Steckel Report was submitted in connection with both of the Motions to Strike, by W.B. Mason at Docket No. 96-1 (with Stewart Report Motion) and by Dairy Queen at Docket No. 111 (Ex. B to Joachimsthaler Report Motion). The Court will cite to Docket No. 96-1 only.

On December 4, 2020, W.B. Mason filed the Motions to Strike, requesting that the Court strike portions of the Stewart Report, specifically paragraphs 17-29 and 50-51 (Dkt. 92 at 1-2), and strike portions of the Joachimsthaler Supplemental Report, specifically paragraphs 34-38; exhibit 7; paragraph 75; the fifty-six newly cited authorities; and portions of the Joachimsthaler Supplemental Report that rely upon the fifty-six newly cited authorities (Dkt. 100 at 1-2).  Dairy Queen filed its response and supporting materials on December 11, 2020.  (Dkt. 109 (Joachimsthaler Report Motion); Dkt. 117 (Stewart Report Motion).)  The Court held a hearing on the motions on January 13, 2021.  (Dkt. 122.)  After the hearing, on January 15, 2020, W.B. Mason submitted a letter to the Court in response to questions at the hearing, attaching a "Revised Exhibit D to [the Joachimsthaler Report Motion]."  (Dkt. 124.)  Dairy Queen filed a response letter on January 19, 2020.  (Dkt. 126.)  A hearing before Judge Nelson on W.B. Mason's anticipated summary judgment motion and anticipated *Daubert* motion as to Dr. Joachimsthaler is scheduled for March 29, 2021.  (*See* Dkts. 129, 131 at 1.)

## II.     LEGAL STANDARD

Under the Federal Rules of Civil Procedure, expert disclosures shall be made "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  An initial expert disclosure must include a written report that "must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them."  Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).  Rebuttal expert disclosures "contradict or rebut evidence on the same subject matter identified by another party."  Fed. R. Civ. P. 26(a)(2).  "The function of

4

rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party. As such, rebuttal evidence may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) (internal quotation marks and citations omitted).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Because Rule 37(c) sanctions are mandatory, the rule contains exceptions for 'substantially justified' or 'harmless' violations to 'avoid unduly harsh penalties that may result from an inflexible application of the Rule.'" *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, No. 13-CV-3003 (WMW/DTS), 2021 WL 101193, at *22 (D. Minn. Jan. 12, 2021) (quoting *Transclean Corp. v. Bridgewood Servs., Inc.*, 101 F. Supp. 2d 788, 795 (D. Minn. 2000)). "[A] critical consideration [is] the prevention of unfair surprise." *Transclean*, 101 F. Supp. 2d at 795 (citing *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995)). "As such, when determining whether a violation was substantially justified or harmless under Rule 37(c), district courts consider four factors: '[1] the importance of the excluded material; [2] the explanation of the party for its failure to comply with the required disclosure; [3] the potential prejudice that would arise from allowing the material to be used . . . ; and [4] the availability of a continuance to cure such prejudice.'" *Fesenmaier*, 2021 WL 101193, at *22 (quoting *Transclean*, 101 F. Supp. 2d at 795-96); *see also Bison Advisors LLC v. Kessler*, No. CV 14-3121 (DSD/SER), 2016 WL

3525900, at *2 (D. Minn. Jan. 21, 2016) (same factors). "[T]he exclusion of evidence is a harsh penalty and should be used sparingly." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (quoting *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 190 (8th Cir. 1995)).

### III.   ANALYSIS

As to the Stewart Report Motion, W.B. Mason argues that "significant portions of the Stewart Report are not 'rebuttal' at all" and that it is "procedurally improper and prejudices W.B. Mason by turning the burden of proof on its head." (Dkt. 94 at 1-2.) According to W.B. Mason, it was improper for Dr. Stewart to opine on the Jay Report as a rebuttal report because Dairy Queen bears the burden of proof as to trademark dilution and Dr. Stewart could have offered opinions about the Jay Report when initial expert disclosures were due. (*Id.* at 9.) W.B. Mason argues that the challenged paragraphs of the Stewart Report, while framed as a rebuttal to the Steckel Report, do not address new evidence and "are a transparent attempt to 'bolster testimony offered by [ADQ] in its case-in-chief' and are therefore improper." (*Id.* at 10 (quoting with alterations *Hein v. Deere & Co.*, No. C11-0113, 2013 WL 3816699, at *10 (N.D. Iowa July 22, 2013)).)

As to the Joachimsthaler Report Motion, W.B. Mason's primary objection is that Dr. Joachimsthaler presented research and information in the Joachimsthaler Supplemental Report that he could have, but did not, include in his initial report. (Dkt. 102 at 1.) This includes new survey results from a third-party survey firm, Brand Keys Customer Loyalty Engagement Index; information about Shake Shack and its water brand; and "nearly sixty (60) newly-cited authorities (and corresponding portions of the

6

Supplemental Report)," which were not included in Dr. Joachimsthaler's initial report. (*Id.* at 4-5, 8-13.)

Dairy Queen responds that the challenged paragraphs in the Stewart Report "are a clear rebuttal to Dr. Steckel's and Ms. Butler's criticisms of the Jay Report" and Dr. Steckel's critique of Dr. Joachimsthaler's initial report. (Dkt. 117 at 7-8, 9-10.) Dairy Queen also argues that the challenged portions of the Joachimsthaler Supplemental Report do not contain new opinions or theories that are different from those set forth in Dr. Joachimsthaler's initial report (Dkt. 109 at 1) and the new research and information are responsive to critiques offered by Dr. Steckel and Dr. Hoyer. (Dkt. 109 at 1, 16-17.)

The Court is not persuaded that the Challenged Reports contain improper rebuttal. This question must be viewed through the lens that "[t]he function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." *Marmo*, 457 F.3d at 759. When rebuttal reports are permitted, "explain[ing]," "counteract[ing]," and "disprov[ing]" contemplate that a rebuttal report may contain information that was not disclosed in the initial report. Otherwise, an expert would need to cite every possible reference and respond to every possible argument she could think of in an initial report (even when rebuttal reports are permitted under a scheduling order) to avoid exclusion. And while it is true that Dr. Stewart could have offered an opinion regarding the Jay Report with initial expert disclosures, it seems to the Court that had Dairy Queen done so, Dr. Stewart still could have offered a rebuttal report responsive to W.B. Mason's experts' critiques of Dairy Queen's initial reports—which may have led to a motion similar to the Joachimsthaler Report Motion.

7

Moreover, none of the cases cited by W.B. Mason involve circumstances similar to those presented here. *Hein* involved improper supplementation under Rule 26(e) where an expert offered new opinions as to alternative product designs nine months after his initial report and six months after the opposing side served its responsive expert report, and in any event, the court determined that the second report failed to meet the evidentiary reliability requirement. 2013 WL 3816699, at *7. *Marmo* and *Faigin v. Kelly* both involved testimony at trial. *Marmo*, 457 F.3d at 758 ("The district court refused to allow Marmo to call Dr. Meggs as a witness in her case-in-chief and later ruled that Dr. Meggs could not testify as a rebuttal witness. Marmo challenges these rulings on several grounds."); *Faigin v. Kelly*, 184 F.3d 67, 85 (1st Cir. 1999) ("Faigin faults the district court for refusing to allow him to present rebuttal testimony. The principal objective of rebuttal is to permit a litigant to counter new, unforeseen facts brought out in the other side's case.").

In another of W.B. Mason's cited cases, *Crowley v. Chait*, the court **declined** to exclude an attachment to a rebuttal report of a transcript from a conference held in 1984 that was intended to rebut a criticism made by the opposing expert, explaining:

> PwC argues that Szkoda did not cite actuarial literature in her initial 2000 report to provide the basis for the standards she applied when critiquing C & L, even though she had the transcript in her possession at the time she filed her 2000 report and could have included it. Because she could have included it earlier and failed to do so, PwC argues the attached transcript should be barred. The Court disagrees. Plaintiff correctly asserts that PwC's reading of what is permissible on rebuttal is substantially more narrow than the Third Circuit's. The Third Circuit's rule does not automatically exclude anything an expert could have included in his or her original report. Such a rule would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later

8

> introducing the relevant material. All that is required is for the information to repel other expert testimony, as Szkoda's inclusion of the attachment does. The Court will not exclude the attached transcript.

322 F. Supp. 2d 530, 551 (D.N.J. 2004) (citation omitted).[5] Although neither *Crowley* nor the Third Circuit law *Crowley* applies is binding on this Court, the Court finds the reasoning of *Crowley* persuasive. In sum, the Court concludes that the at-issue portions of the Challenged Reports, on balance, constitute opinions "'attacking the theories offered by the adversary's experts'" rather than improper rebuttal. *Lalli v. U.S. Life Ins. Co.*, No. CIV. 10-3591 SRN/LIB, 2011 WL 2601795, at *2 (D. Minn. July 1, 2011) (quoting *Int'l Bus. Machs. Corp. v. Fasco*, No. C–93–20326, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995)).

To the extent the Challenged Reports do stray from proper rebuttal, the Court finds that any such violation is harmless such that the offending material should not be stricken. *See* Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *see also Soo Line R. Co. v. Werner Enters.*, 8 F. Supp. 3d 1130, 1138 (D. Minn. 2014) (concluding that "[e]ven if these [expert] witnesses are not proper rebuttal witnesses, however, exclusion is not warranted" because

---

[5] In *Crowley*, the court did exclude expert testimony from an expert who had reviewed only eight deposition summaries before preparing his expert report and claimed to have since reviewed 30 more depositions. 322 F. Supp. 2d at 551. In excluding the testimony, the court distinguished those facts from the inclusion of the transcript as an attachment to an expert report that was "information to repel other expert testimony." *Id.*

9

any failure to comply with Rule 26 with regards to those witnesses was harmless), *aff'd sub nom. Soo Line R.R. Co. v. Werner Enters.*, 825 F.3d 413 (8th Cir. 2016). As discussed in Section II, factors relevant to whether a violation of Rule 26 is substantially justified or harmless under Rule 37(c) are (1) the importance of the material sought to be excluded; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the material to be used, and (4) the availability of a continuance to cure such prejudice. *Fesenmaier*, 2021 WL 101193, at *22

In this case, the Court views the potential prejudice as the critical factor. In its supporting memoranda, W.B. Mason states that it would be prejudiced by allowing the portions of the Challenged Reports to be used, but the statements are conclusory, and the memoranda contain no explanation of the specific prejudice W.B. Mason would suffer. (*See* Dkt. 94 at 1-2, Dkt. 102 at 1-2 ("This . . . is procedurally improper and prejudices W.B. Mason by turning the burden of proof on its head.").) At the hearing, with respect to prejudice, W.B. Mason stated as follows:

> You can't save something for later and you can't count on being able to come in with new evidence that wasn't identified in the first instance in which the other side doesn't have a fair opportunity to respond to. That's just -- that sequencing isn't fair and automatically causes prejudice. So, Your Honor, with respect to prejudice -- and you asked what the appropriate remedy is, I think it's absolutely appropriate to hold Dairy Queen's feet to the fire here and say the rule is the rule, and it's there for a reason, it's there for fairness, and you violated the rule.

(Dkt. 127 at 20:13-23.)[6]  To the extent W.B. Mason is arguing that any improper rebuttal "automatically causes prejudice," that is contradicted by Rule 37 itself, which states that a violation should not result in sanctions if "the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *see Bison Advisors*, 2016 WL 3525900, at *7 (denying motion to strike) (rejecting argument that "late disclosure of an expert is by its very nature not harmless" because "if the rule offered by Defendants were a categorical rule, it would be contrary to the notion that courts must consider various factors relevant to a determination of whether a failure to comply with expert disclosure obligations is substantially justified or harmless and exercise their discretion to determine an appropriate remedy under the circumstances, as every late disclosure would be harmful").  The Court also has some concern about adopting a conclusive "fair opportunity to respond" test for harm, as that could result in endless cycles of expert reports in an attempt to get the last word.

     Having considered the Challenged Reports and the litigation's history, the Court finds the potential prejudice to W.B. Mason weighs against exclusion.  W.B. Mason deposed Dr. Stewart and Dr. Joachimsthaler after Dairy Queen served the Challenged Reports on September 18, 2020.  (Dkt. 114-1, Ex. B (November 6, 2020 deposition of Dr.

---

[6] W.B. Mason also argued that "[Dr. Joachimsthaler is] not being prejudice[d], and Dairy Queen's not being prejudiced by being limited to what Rule 26 says they were supposed to do in the first place."  (Dkt. 127 at 21:13-16.)  The question is whether **W.B. Mason**, the moving party, will be prejudiced if the opinions are allowed to be used, not whether Dairy Queen will be prejudiced if it cannot rely on the opinions (although that question is perhaps related to another factor, the importance of the excluded material).  *See Transclean*, 101 F. Supp. 2d at 795-96.

Stewart); Dkt. 103-3, Ex. E (November 9, 2020 deposition of Dr. Joachimsthaler); Dkt. 110-2, Ex. D (same).) Dairy Queen represents that W.B. Mason's experts—Ms. Butler, Dr. Hoyer, and Dr. Steckel—were able to testify regarding the Challenged Reports in their depositions, providing W.B. Mason with some opportunity to respond. (*See* Dkt. 117 at 10; Dkt. 109 at 13.) W.B. Mason has not disputed that it has had adequate opportunity to depose the authors of the Challenged Reports or argued that its experts needed more time to review the Challenged Reports before testifying about them at depositions. W.B. Mason has not argued that it needs an opportunity for further discovery, an opportunity for a sur-rebuttal, or more time to review the Challenged Reports in order to be adequately prepared for summary judgment motions and trial. W.B. Mason has identified little prejudice at best, and arguably none.[7] The potential prejudice to W.B. Mason does not justify the harsh penalty of excluding portions of the Challenged Reports. *See Soo Line R. Co.*, 8 F. Supp. 3d at 1138 ("Any delay in disclosure of experts was minimal, as the expert reports were filed within the forty-five days prescribed for rebuttal experts in this case. As a result, there has been no prejudice, as Werner has had a sufficient opportunity to depose the experts following their identification prior to trial.") (citations and internal quotation marks omitted); *Issack v. Electrolux Home Prod., Inc.*, No. 13-CV-194 (MJD/LIB), 2013 WL 12408935, at *3 (D.

---

[7] At the hearing, the Court noted that "there is some prejudice to W.B. Mason if" the specific material of the Brand Keys and Shake Shack information was allowed to be used because that material seemed to be supporting Dr. Joachimsthaler's credibility, not his opinion. (Dkt. 127 at 30:19-23.) While the Court does not find that prejudice sufficient to justify exclusion, nothing in this Order precludes W.B. Mason from making arguments about that material at a later date for Judge Nelson to decide.

Minn. Oct. 23, 2013) ("Prejudice to the Defendant, or, the flip side of the coin, harmlessness of the untimely identification, is what drives the Court's decision on whether or not to exclude. Defendant has failed to make a sufficient showing to warrant exclusion.").

The Court briefly addresses the other factors for determining whether a violation was substantially justified or harmless under Rule 37(c) and concludes that they either do not weigh in favor of striking or are neutral. First, as to the availability of a continuance to cure such prejudice, W.B. Mason has not requested a continuance or any relief other than striking. Indeed, W.B. Mason appears prepared to file its dispositive motions. (*See* Dkt. 129 (seeking an increased word count limit for anticipated summary judgment motion and *Daubert* motion as to Dr. Joachimsthaler).) This factor is neutral, or even weighs against granting the Motions to Strike.

Second, regarding the importance of the excluded material, W.B. Mason does not dispute that the at-issue portions of the Challenged Reports are relevant to the core issues of trademark infringement and dilution. This weighs against exclusion. *See Soo Line R. Co.*, 8 F. Supp. 3d at 1138 ("Further, the proposed expert testimony relates to an important issue in the case: whether Buzzell's alleged incapacitation rebuts the presumption of negligence established by violation of the traffic statute. As a result, the court declines to exclude the purportedly-untimely expert testimony.").

Third, the Court must consider the explanation of the party for its failure to comply with the required disclosure. As discussed above, the Court concludes that much (if not all) of the at-issue portions of the Challenged Reports is proper rebuttal, or at least

13

there was a good-faith, non-frivolous dispute as to that question. This weighs against excluding the information at issue, as Dairy Queen's conduct is not so egregious or insupportable that striking is warranted.

Having considered the four factors, the Court concludes that any failure to timely disclose the at-issue portions of the Challenged Reports is harmless, rendering the harsh penalty of exclusion inappropriate. Consequently, the Court denies the Motions to Strike.

## IV.   ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant W.B. Mason Co., Inc.'s Motion to Strike Portions of ADQ's Expert Report of David W. Stewart, Ph.D. (Dkt. 92) and Motion to Strike Portions of ADQ's Supplemental Expert Report of Erich Joachimsthaler, Ph.D. (Dkt. 100) are **DENIED**.

DATED: February 9, 2021                              *s/Elizabeth Cowan Wright*
                                                                                  ELIZABETH COWAN WRIGHT
                                                                                  United States Magistrate Judge